JACOBO ORTIZ, known as JACOB CRUZ ORTIZ, Plaintiff and Appellant, *v.* ENRIQUE CRUZ PABÓN, ETC., ET AL., Defendants and Appellees.

No. R-70-14. Decided June 24, 1970.

*Enrique Báez García* and *Víctor E. Báez* for appellants. *Carlos García Méndez* and *A. Ramírez Silva* for appellees.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

Jacobo Ortiz, in search of his true father, filed a filiation action where his natural mother Virginia Ortiz Ocasio, her husband Enrique Cruz Pabón, and the heirs testamentary of the predecessor, Jaime Acosta Forés, who were his adopted

daughter Herminia Acosta López and his widow Delia L. López, were joined as defendants.

The Mayagüez Part of the Superior Court rendered judgment dismissing the complaint on an assumed prescription, without considering its merits. According to the facts alleged and to the documents in the record, plaintiff Jacobo Ortiz was born on June 20, 1927. It was alleged that he was born as a result of the illicit relations between Virginia Ortiz Ocasio and Jaime Acosta Forés. She was single and Acosta Forés was married to Delia L. López.

On December 26, 1930, Virginia Ortiz Ocasio, who was single, married Enrique Cruz Pabón, who was divorced. In the Marriage Certificate it is stated that Enrique Cruz Pabón had not begotten children in his previous marriage, but it does not show that Virginia Ortiz Ocasio, single, had begotten a son.

When plaintiff was 17 years old, his mother, Virginia Ortiz Ocasio, and her husband, Enrique Cruz Pabón, stated in an affidavit to that effect that plaintiff, Jacobo Ortiz, had been begotten by them before they contracted marriage, and pursuant to the provisions of Act No. 117 of May 12, 1943, they requested from the Demographic Registrar to establish his legitimation by subsequent marriage in plaintiff's birth certificate, where he appeared as the son of Virginia Ortiz Ocasio, the name of his father not appearing therein. According to that request it was thus stated by the Demographic Registrar in a Birth Certificate which substituted the former, plaintiff being registered for all demographic purposes, as the son of Virginia Ortiz and Enrique Cruz Pabón, legitimized by subsequent marriage.

Jaime Acosta Forés died testate on August 12, 1964, married to Delia L. López, his heirs being an adopted daughter, defendant Herminia Acosta López, and his widow. On July 16, 1965, the filiation complaint was filed. As it has been stated, the merits were not considered because the trial

court determined that the action had prescribed. It applied the 15-year prescription of § 1864 of the Civil Code, 1930 ed.[1] It held that plaintiff having reached full age on June 20, 1948, upon filing the action on July 16, 1965, 17 years had elapsed, the prescriptive term of 15 years having already expired. We issued a writ of review to consider the aforementioned judgment.

The first cause of action of the complaint was directed against codefendants Virginia Ortiz Ocasio and Enrique Cruz Pabón, and in accordance with the facts set forth, by virtue of said first cause of action, the nullity of the status and of the entry of legitimation made in 1944 in the Demographic Registry was requested. The second, third, and fourth causes of action were directed against the codefendants heirs of Jaime Acosta Forés, and facts were alleged leading to prove that plaintiff was born by virtue of concubinary relations between Acosta Forés and Virginia Ortiz; to challenge the will for preterition, and to claim plaintiff's respective hereditary estate in accordance with the property left by predecessor.

Defendants Virginia Ortiz and her husband Cruz Pabón accepted the first cause of action which concerned them. They accepted that plaintiff had not been begotten by them before their marriage, and though they legitimized him as their son begotten before marriage, that was a false act, performed for the purpose of providing plaintiff, who was already a youth in High School, with a surname.

We need not stop here to discuss thoroughly whether or not the prescriptive period of 15 years or any prescriptive period was applicable to this case as to the first cause of action, directed to nullify the status and entry of legitimation of plaintiff as son of his natural mother and codefendant

---

[1] Section 1864: "A mortgage action prescribes after twenty years, and those which are personal and for which no special term of prescription is fixed, after fifteen years."

Enrique Cruz Pabón. If in due time the facts were to establish that plaintiff was, in effect, born from the concubinary relations between his mother and Acosta Forés, it is questionable whether any prescriptive term would be applicable to the action to nullify the declaration and entry of the legitimation for being false and nonexistent especially when it is a question of a judicial decree of the nonexistence of a false fact which would affect the personal status of the individual while he lives. But it is not necessary to decide now that point in one sense or the other for the reasons we set forth hereinafter:

If it were established that plaintiff was begotten by predecessor Acosta Forés in 1927, at the date of his birth he would not have had any action for filiation because he was the fruit of the then called adulterine relations, since Acosta Forés was married.

Under the same assumption to the effect that the filiation were established, Act No. 229 of May 12, 1942, granted plaintiff the status of natural child instead of adulterine, susceptible of being recognized by the voluntary action of the father or his heirs, and susceptible of being legitimized by a subsequent marriage of the parents to each other. However, it was not until Act No. 243 of May 12, 1945, amending the former Act No. 229, that plaintiff was granted, to prove the filiation, a judicial action for compulsory recognition, if it was not done by the voluntary action of the father or his heirs. Said compulsory action for filiation, however, was limited for the sole purpose of bearing the surname of the father. This was the legal situation when plaintiff reached full age on June 20, 1948.

Pursuant to the Constitution of the Commonwealth of Puerto Rico, the Legislature of Puerto Rico approved, on August 20, 1952, Act No. 17 providing that "all children have, with respect to their parents and to the estate left by the latter, the same rights that correspond to legitimate chil-

dren." This declaration of equality was adopted retroactive to July 25, 1952, date when the Constitution became effective.

Even in the extreme case of a person born within wedlock, presumed to be the son of the husband, we acknowledged therein a cause of action to seek the true father in case the husband did not actually beget him, nor was the true father. *Agosto* v. *Javierre*, 77 P.R.R. 444 (1954).

 If the true filiation were established a judicial declaration of filiation of this true filiation would nullify and render ineffective any personal status to the contrary with which that person would appear in the Demographic Registry as someone else's legitimate child or legitimized. Thus, a declaration of filiation in due time, establishing that plaintiff is the son of Acosta Forés if said filiation was proved, would annul and render ineffective *ipso jure* the status and the entry of legitimation to the contrary in the Demographic Registry, showing that plaintiff was the legitimized son of Cruz Pabón. Under those circumstances, and even though we accepted that the action to order the nullity of the entry of legitimation was prescribed by the lapse of 15 years, that could not defeat the action for filiation by itself, since there is nothing in the law nor in the applicable rule of law that requires a previous judicial declaration of the nullity of the entry of legitimation in order for the court to decide the action for filiation in itself.

The unavoidable consequence of plaintiff's judicial declaration of filiation as the son of Acosta Forés would be the destruction of the artificial status of the Registry as legitimized son of Cruz Pabón. Of course, and according to *Javierre, supra*, Cruz Pabón as the assumed father should be notified of the proceeding and heard, as in effect he was, since a judgment determining a different filiation could affect him in his potential right as plaintiff's heir. Not only was Cruz Pabón made a party thereto and heard in the proceeding, but that according to the allegations he accepted the order of

nullity of the status and the entry of legitimation because said status of legitimation was nonexistent, grounded on a false declaration.

■ Under the above-mentioned circumstances, the first cause of action directed solely to obtain the judicial declaration of the nullity of the entry of legitimation was superfluous, or at least, it did not constitute a previous requirement essential at law for the court to take cognizance of the rest of the complaint in regard to the fact of the filiation and the inheritance. Even if it were not so, and assuming that the prescriptive period of 15 years were applicable, there remains still the additional fact that it was not until August 20, 1952, by virtue of Act No. 17, that plaintiff could exercise the *full* action for filiation which he exercises in this case, that is, that with said filiation he could also have the right to the inheritance at the death of his true father, without the action being limited to the surname. See: *Ocasio v. Díaz*, 88 P.R.R. 658 (1963).

■ If the prescriptive period of 15 years were to be applied the starting point to count would be from August 20, 1952, and on July 16, 1965, said period had not as yet elapsed. In the absence of an express provision of law to the contrary, the prescription of an action begins to run from the day when the action could have been instituted. Section 1869 of the Civil Code, 1930 ed.

In this case of filiation there is only one fatal term to bring the action. Plaintiff being of full age when his assumed or alleged father died, he should have brought the action within one year after said death, pursuant to § 126 of the Civil Code. As we have held, this term is the most strict and demanding term of extinguishment, more than of the mere prescription. *Ortiz Rivera v. Heirs of González Martínez*, 93 P.R.R. 549 (1966). Acosta Forés having died on August 12, 1964, the complaint filed on July 16, 1965 falls within said term.

■ Finally, it is known that the hereditary rights are governed by the law in force at the date of the death. *Ex Parte Orona*, 87 P.R.R. 800 (1963) and cases cited therein; *Ocasio v. Díaz, supra.* The law in force at the death of Acosta Forés was the above-copied Act No. 17 of August 20, 1952, which allowed plaintiff, after the filiation was established, to claim the inheritance in equal conditions to those of any other son.

On the foregoing grounds, the judgment which dismissed the complaint because the action had prescribed shall be reversed, and the case shall be remanded for the trial court to consider it and decide on the merits, and if it is decreed that plaintiff is the son of the deceased Acosta Forés, to determine his inheritance in accordance with the alleged inheritance estate whose existence is established; and for further proceedings compatible with our decision herein.

Mr. Chief Justice Negrón Fernández and Mr. Justice Rigau did not participate herein.